Good morning, everyone. The first case this morning is No. 05-5142, REC Service Corporation v. United States. Mr. Johnson. Good morning, Your Honor. My name is Christopher Johnson. I may please the Court to be representing the appellant in this matter, REC Services Corporation. This appeal concerns the U.S. Court of Federal Claims jurisdiction entertaining a post-award bid protest bought by a prospective bidder. We believe the court below committed two errors of law when it concluded the appellant was not an interested party pursuant to statutory definitions which govern that court's jurisdiction. The appellant was clearly a prospective bidder in this matter in that the solicitation named appellant sought a specific critical application item which was illustrated by a technical data package called out in the solicitation which specifically was drafted around appellant's part. I'll tell you what bothers me, Mr. Johnson. Why didn't he bid? Your Honor, we reviewed the amended solicitation. We were concerned that other parties had had access to a proprietary technical data package. We were very concerned we would not be bidding into a level playing field. So we didn't bid at all? No, Your Honor, we did not. We instead pursued our administrative rights to file a pre-award agency protest pursuant to the Federal Acquisition Regulations in which we alleged possible violations of an acquisition statute. We were required under the Procurement Integrity Act, Section G, to go to the agency first before we could even file an action at the General Accounting Office. So you abided from pursuing those remedies concurrently, that is bidding and also complaining that they included your data? No, Your Honor. We could have done both. We could have filed an agency protest and we could have submitted a bid. But based upon our review of the solicitation, the amended solicitation that the Department of Labor or DLA had issued, we were convinced that only a party that had access to our proprietary data could also submit an offer in response to that. We had filed a prior agency protest with the Department of Defense because in the prior procurement for these exact same goods, they had in fact published a drawing which copied part and parcel our proprietary data. So we were very concerned that there were possible violations of the Procurement Integrity Act. For that reason, we sought our pre-award administrative remedies. You didn't have a substantial chance of getting the contract if you didn't bid at all. Your Honor, the solicitation issue here anticipates multiple award contracts in which the government reserves its right to issue future delivery orders against sources named in the solicitation. We were a source named in that solicitation. While our agency protest was pending, DOD in fact issued a request for quotation to our client naming the exact same part that was specified in the solicitation. So we believe at all times we still had an opportunity to secure future delivery orders against the solicitation. The way DOD structured this procurement, it was really a two-step procurement. Anybody who sought to compete had to be an approved source. In other words, they had to submit a complete technical data package against my client's technical data package. That's the way DOD set this up. This Court, having a lot of experience in intellectual property, recognizes the importance of a technical data package in illustrating the quality standards under which DOD seeks to benefit when they acquire critical application items. But Mr. Johnson, you did not bid, nor were you prevented from bidding. Did the DOD prevent you from bidding on the contract? Yes, Your Honor, they didn't prevent us from bidding, but they discouraged us from bidding. Because the way the solicitation was drafted, only a party that had access to our technical data package could submit a bid on this, could compete. Had we submitted a price in response to the initial solicitation, Your Honor, our price would have been exposed. Had our competitors been provided, whether it was negligently or purposely, with copies of our intellectual property, they were then in a position to alter the playing field and bid against us without having to incur the cost. But that was a business decision on your part, though, wasn't it? Yes, Your Honor, it was. But in making that business decision, we sought to avail ourselves of our rights to clarify with the agency whether or not they had, in fact, either negligently or purposely given competitors access to our technical data package. If our competitors had had access, Your Honor, they could submit prices without having to not reflect the cost that we would have incurred to maintain that technical data package. When DOD drafted this solicitation, they made a bargain with the industry. DOD benefits from a detailed technical data package because it assures that they acquire goods and services that reflect the quality standards in that technical data package. In exchange, my client should have a right to protect its competitive position in the DOD market for the parts that reflect the quality standards in that technical data package. Your Honor is correct. We did make a business decision not to compete. That business decision was based upon information that we believed was reasonable, under which we concluded there were possible violations of an acquisition statute that would impede our competitive position in this market. This was a three-year IDIQ contract, Your Honor. The DOD was going to be buying these parts, a minimum of 3,500 parts over a three-year period. We were very concerned that, based upon Department of Defense's prior actions, that they had effectively impaired our ability to compete fairly for these parts. Your Honor, the second error the Court made is concluding that we lack the direct economic interest in this procurement. The Court's standard is so narrow that neither a prospective bidder or an actual bidder could ever file a post-award protest. The Court literally interpreted this Court's prior decision in MCI to state that once a contract's awarded, you have no interest in that specific contract. Therefore, you have no standing, and that would apply to either a prospective bidder or an actual bidder. We believe that MCI, that portion of MCI- Why would it apply so broadly? I mean, it seems to me that the Court was much impressed by the absence of an actual bid. So, as you're telling us all of the dire consequences of the trial court's decision, it seems to me that the lack of an actual bid was a very strong factor in that decision. It was a very strong factor, Your Honor, in the Court's decision, but the Court failed to recognize the efficacy of our pre-award agency protest. Since this circuit ruled in MCI that federal acquisition regulations have been amended to allow parties to pursue a pre-award agency protest and protect their rights, if Judge Legra's decision stands, potential aggrieved parties that are concerned about problems in the acquisitions process will have to go directly to the Court of Federal Claims because if they went to the General Accounting Office or the agency, as this Court knows, both those forms have the right to issue documentation overruling the state and making an award. Under the lower court's view, the pure making of that award would divest the prospective bidder from any standing to attack the award in the Court of Federal Claims. Again, Your Honor, I recognize we made a business decision not to pursue the bid. If we had sat back and did absolutely nothing, I think we would have been in trouble, but we clearly reviewed this Court's prior decision in MCI, which relied on the Ninth Circuit and said if you file a proper bid protest, which has never really been defined in this Court, you can preserve your status as a prospective bidder. You can still preserve your rights to seek relief after the award is made. What about our decision in the Federation of Government Employees v. the U.S. where you need to have a direct economic interest in order to have standing to bring the bid protest? Does that essentially prevent you from having any standing at all? No, sir, Your Honor. The Court has never really defined what they meant by direct economic standing. We believe it could mean the ability to remove the ability of first-year subcontractors to file rights. But after IMPRESA, I think the reasonable interpretation would be that your economic interests are not in the contract but in the services sought by that contract. The services. Not simply the contract, but the services or goods that were sought to be acquired under the contract. But with respect to the direct economic interest, wouldn't you really need to file a bid first before you can file a protest to that bid? Is that a precondition, essentially, in order to have an economic interest? No, sir, Your Honor. The statute anticipates that you could exercise your protest rights rather than filing a bid. In the hypothetical situation, if this had been true, we think it could have been, we would have been extremely prejudiced by potential violations of the Procurement Integrity Act. Had we ignored that and filed a bid instead, our price would have been exposed. The agency or GAO could then deny our protest, our price has been exposed, and we have no recourse after that. Your Honor, I'd like to reserve my last four minutes for a rebuttal. Yes, you may indeed. Mr. Chadwick. May it please the Court, good morning. This Court held approximately 17 years ago at MCI, interpreting this same language for finding an interested party. But that's a different statute, though, isn't it? That is a different statute, but the same language. And the Court said in that, interpreting the Brooks Act, it said, it referred to a Ninth Circuit case that interpreted CICA, and as you know, the CICA definition has now been adopted under the Tucker Act, and it's the identical language. And the Court said the solicitation must be outstanding when protested, in order for those having not yet submitted bids to be considered prospective bidders on the proposed contract. Chadwick, is the government's position that there's an absolute right to take a person's, let's say, who hasn't yet bidded proprietary technical data and expose it to other possible bidders for the same product? Of course not. But it's also incumbent upon the person who believes they're harmed to assert their rights in a proper manner. Well, what does a person do in such a circumstance? The harm, in a sense, has been done. If the position of the government is that that technical data was exposed or distributed in error, how does one remedy such an error? Well, first of all, you can file a pre-award protest if you believe the solicitation is so tainted that it shouldn't go forward. Rex had the option to file a pre-award protest, did not file a pre-award protest. It would have had standing because the solicitation would have not yet closed, and it would have been a prospective bidder, and presumably could have- They say if they bid, it would have been even worse because then their prices, too, might well have been exposed to competitors. They say that, but first let me point out they had the option to do something else rather than bidding, which is to simply file a pre-award protest either at the GAO, which would have initiated an automatic stay, or go to the Court of Federal Claims and seek temporary injunctive relief in order to stay the solicitation. That's one option that protesters can avail themselves of. You can also bid. I mean, they say that they chose not to bid for reasons which may or may not sound reasonable when counsel states them, but the statute doesn't have an exception for that. The statute says you must be an actual-well, it says you have to be an interested party, but the definition says you must be an actual or prospective bidder on the day you file your protest for the solicitation that you are protesting, period. And so the recs would have had to operate within that law and find ways to assert its remedies. Was a potential bidder an interested party? Prior to the award, yes, but not after. Prior to the close of bids, a potential bidder, yes, it's presumably an interested party. So they could have filed a pre-bid protest? Yes. As an interested party, it would have had standing to do that at that point. We don't know of any reason why it wouldn't have, and it certainly would have been difficult for us to argue that it didn't, since I think what counsel has said about recs as standing under this solicitation is not quite right, but what recs was was the one pre-approved source. It was the one company that could bid without having to go through the process of being approved as a source. There was no way for the agency to make an award to recs under this solicitation unless recs actually bid. Well, I presume they would have been qualified since it was their technology that was being bid on. That's right, yeah. Recs filed a pre-award protest. I don't think we'd be here with this argument, but the fact is that recs filed an agency protest, which, by the way, was on a different theory than the Court of Federal Claims action, filed an agency protest the day before bids closed. The bid closed approximately five months later. It was November of 2004 when the bids closed. In March of 2005, recs filed an action in the Court of Federal Claims challenging not the solicitation, not challenging the solicitation, no longer arguing that the solicitation was tainted because of the release of proprietary material. The action in the Court of Federal Claims, as the trial court noted, was only complaining about the award to Associated, complaining that Associated was not qualified. There were references in there to potential issues with proprietary information, but it was no longer a claim, as recs had raised before the agency earlier, that the whole thing was so tainted by proprietary information. Recs' claim then in the trial court, when we got there, was simply that its competitor Associated wasn't qualified and shouldn't have gotten that award. That's what the trial court is referring to on page five when it says, in its motion for judgment on the administrative record, plaintiff does not assert any errors regarding the solicitation itself. It merely challenges the agency's exercise of discretion in awarding the contract to Associated. So this is a case where recs chose to wait until after award and then to attempt to block the award to its competitor, and that is clearly not what CICA would contemplate with this definition, would allow. I have a few seconds before I need to turn over my time to counsel for Associated, but I did want to emphasize that I think the court might get a misimpression from what Mr. Johnson has said this morning with respect to whether the agency could have placed an order under this solicitation with recs, and the fact is it could not have. There is a purchase order in the record, page 22 of the joint appendix, but if you compare that to the solicitation, it has a different number, has a different contract number, and the reason that's true is that recs has been the sole source supplier of this part to the Navy for many years, and this was the Navy once again ordering from recs as a sole source pending the outcome of the other solicitation. It's not the case that the Navy could simply order under this solicitation we're talking about today and perhaps the recs hadn't submitted to this. With that, I'll turn it to counsel for Associated unless there are further questions. Thank you. Thank you, Mr. Chadwick. Mr. Rush. May it please the court, good morning. I'm Bradley Rush for Appellee Associated Aircraft. My view is that this is, in contrast to the appellant's position here, this is a very garden variety bid protest issue, whether they have standing. As Mr. Chadwick just pointed out, what they were appealing or protesting before the court of federal claims was different than what they protested to the agency, and that difference is the whole difference why we're here. What appellant doesn't seem to recognize is that at each stage of a procurement, the rights of interested parties or participants change. So the law recognizes that pre-close of solicitation, pre-offer, the rights are very broad to allow the maximum amount of competition possible under SECA. After the solicitation deadline has passed, those rights narrow to those who are actually interested parties, those who have actually bid or were prevented by government action permitting. You're skipping what is undoubtedly a critical aspect, although perhaps it's become submerged in the procedures that have been followed here, and that is, in fact, taking the data package, which was then made available, apparently improperly, eliminating, if it is pursued as it has been, the sole source aspect, but also, I gather, permitting and enabling others to bid using the proprietary data that they hadn't generated. And the bid may or may not have been successful if, in fact, Rex had competed for it. That we don't know. But it's more complicated, isn't it, than when and how they chose to protest? That would be true if either of Rex's protests had been sustained. Neither was. The earlier protest that the drawing that... It was sustained because they didn't bid. In both instances, they did not bid. But not because, as they at least argue now, I don't know what they argued below, that they had been wronged in the exposure of their data. That protest was denied by the agency. At that point, and in fact, when the solicitation was issued, my client, Associated, had become an approved source for the parts. So if you look at what the Court of Federal Claims is looking at, what the government did in this award action, then the solicitation required, as Mr. Johnson said, approved sources. Associated, at the time the solicitation was issued, was an approved source for the switch. Based on data that, I gather, nobody has defended the release of. The release... There is no evidence that that is the case. That was a protest before the agency, which the agency abandoned in this case. The agency denied that protest of Rex. Rex, thereupon, after award, went to the Court of Federal Claims, to take back the award to Associated. Not because of the proprietary data. There is no evidence in this record that my client did anything improper. My client went and did the technical work necessary to produce its own part. I don't believe there's been a... If something were done that was improper, I hadn't thought that that was directed against the competing bidders. If, in fact, the data should not have been released, that was the government's doing. Was it not? Not your client's? That's correct. But the protest before Judge Allegra was that the award should not go through to Associated because Associated could not have made this part without the proprietary data. That's true, isn't it? No, there is reverse engineering. There is independent engineering to produce what is, after all, a switch. It may be a highly technical switch, but there is nothing precluding an engineering firm from producing a switch that meets the solicitation requirements. That's true, but I didn't see the argument, and I don't really mean to put you on the spot to defend the integrity of that aspect of the process. But it does seem to me that there's something here that I haven't been quite able to decipher because, again, it is hard for me to understand why Rex didn't bid. Well, if I may just comment on that, and maybe no one ever thought of this, I certainly haven't seen any of it in this record. Rex could have bid under seal and requested that it not be opened pending the outcome of its agency protest. In other words, Rex had many opportunities to protect its interests and rejected on business decisions every single one of them. The day that it received the decision from the agency denying its protest, it could have gone to the General Accountability Office. It could have gone to the Court of Federal Claims and sought an injunction. It waited until after it learned of an award several days later. When was the protest for the proprietary data denied by the agency? When was it? Yes. I believe the date is February 28th. So it was right around the time that the bids were due? I believe so. 28th of 05? Excuse me, Your Honor. I'm doing this off of a cursory reading of the record myself, but my recollection is that the agency's decision came at the end of February. An award to Associated was made early March, several days later. So it would have been right after the bids were due. So Rex's protest on the proprietary data before the agency was denied before the protests were, I mean before the bids were due? I believe that's correct, Your Honor. In any event, looking at it from Associated's point of view, it was an approved bidder at the time the solicitation was issued in November. The government reviewed Rex's protest, saying that the only way competition could exist is if proprietary data had been exposed. The government decided proprietary data had not been exposed improperly. It denied the award, the protest, and made award properly to Associated. Now, a year later, Rex wants this court to tell the Court of Federal Claims to look at the matter again. And again, we're looking at a whole series of events that must, of necessity, narrow the court's jurisdiction or its exercise of jurisdiction, because that's really what we're talking about. Before bids are due, certainly anybody that could possibly put a bid together should be allowed to bid, and should be allowed to protest, and should be allowed to make its concerns known. After that, the jurisdiction of the court has to narrow, or else you would have a flood of appeals, as we argued in our brief. And I don't think that would be to the benefit of the government or to the procurement community as a whole. I see I have a few seconds remaining, Your Honors. I'd like to thank you for your indulgence. Thank you, Mr. Resch. Mr. Johnson. Your Honor, let me clarify just a couple of issues from the record. The agency protest was filed prior to the date set for bid opening. That would be November 2nd. Bids were due on November 3rd. Our agency protest, our second one, was denied January 28th. The award to Associated was made four days later. The first order under that award was made 20 days later on February 24th, which was the first time our client had noticed that an award had been made to Associated, February 24th. That's when the DLA synopsized the first order under the award. Then I'm confused, because I think I heard Mr. Chadwick say that had the protest been filed before the close of bidding, he wouldn't be here. Well, I don't know what protest Mr. Chadwick's referring to, Your Honor. Our agency protest was clearly filed before the bid date. But that was a protest on a proprietary data, not on the bidding process. It was a protest over the way the DLA was conducting the acquisition, Your Honor. We did not attack the solicitation. We did attack the conduct of the acquisition because the solicitation was so narrow to require any party who could compete to basically submit our technical data package. But you were challenging the data that was being released by the agency in order to put the solicitation together. Yes, sir. So that was your protest. Yes, sir. Your protest was not in the bid itself. No, sir, Your Honor. Which you could have gotten from GAO. You could have protested the bid process directly with GAO. We couldn't have filed a protest over a possible violation of the Procurement Integrity Act at GAO, Your Honor. 41 U.S.C. 423 section G of that act requires prior notice to the agency before you can even go to the GAO for a possible violation of the Procurement Integrity Act. And you have to give that notice no later than 14 days after you first have constructive knowledge of a violation. When the government issued the amended solicitation, not the initial solicitation, but the amended solicitation, and it had all these detailed technical data requirements, at that point in time, we were on notice, there is a possible violation of the Procurement Integrity Act here. We had two choices at that point in time. We could file an agency protest or we could- Relative to the data. Yes, sir, Your Honor. Let me correct one other thing because I know this court is very familiar with technical data issues. Even if an alternative source had sought to submit a reverse engineered product, because of the way DOD, for whatever reason, drafted the data requirements, they were still required to submit our technical data package. It's on page 60 of the record. I would address the court's knowledge to the fact that DOD referenced the fact, alleged, that they had absolutely no technical data available. They required any party that was going to compete in this to submit our technical data package. Another point. The two prior agency protests. It was that we did not prevail on them. They were denied. However, the initial protest which we filed over the fact that the Navy had published our data package, the government took the exact corrective action we requested. They canceled that solicitation. When they came back out the next time, when we filed another agency protest, they correctly said, we're denying this protest, but we're making a sole-sourced award to you. Therefore, they were correct. You have no recourse to go to GAO. We had no available remedy at that point in time except to possibly go to this court. But, Your Honor, there was no justiciable issue at that point in time. The reason both the cause of action that we asserted before the agency, which was a possible violation of Procurement Integrity Act, which is an acquisition statute, and the cause of action we asserted before Judge Allegra down below, which is a violation of the Competition and Contracting Act, both dovetailed from the agency's own technical data requirements. Only a party that had access to our technical data package could have submitted the data package and become eligible for an award under this procurement. That is the way DOD set this up. They obviously sought to benefit from the quality standards in our technical data package by naming our part in the solicitation. We were very concerned when we saw this award was associated. Well, now there has to be a violation of the Competition and Contracting Act because we never gave associated our data package. Your Honor, to close, we did make a business decision not to bid on this, but we did it in the face of a record which indicated us possible violations of the Procurement Integrity Act. We took the only available recourse we had at that point in time, which was to address this with the agency. I know we didn't submit a bid, but we took advantage of our remedies. This Court had previously held that a prior protest can give effect to a prospective bidder's availability to file a post-award protest. We filed a proper protest. We had a justiciable issue before the agency. The protest, unlike the gentleman in the Ninth Circuit, we filed a proper protest. We sought our rights, and that was the only remedy we had available at that point in time. I see my time is up, Your Honor. Thank you very much. Unless there are any further questions from the Court. Thank you, Mr. Johnson. Thank you, Your Honor. Thank you, Mr. Chadwick and Mr. Rush.